UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cr-00017-JPH-CMM |
| | ) | |
| ELVIS C. MEDRANO, | ) | -03 |
| | ) | |
| Defendant. | ) | |

**ORDER**

The government has filed a motion asking the Court to find that
Defendant Elvis Medrano's 2009 Iowa conviction for Possession of Cocaine with
Intent to Deliver qualifies as a "serious drug felony" under the Controlled
Substances Act ("CSA").  For the reasons that follow, the government's motion
is **GRANTED**.  Dkt. [334].

**I.**
**Background**

The Superseding Indictment charged Mr. Medrano with Conspiracy to
Possess with Intent to Distribute and Distribute Controlled Substances in
violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One), and Felon in
Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1) (Count Two).
Dkt. 179.  The Superseding Indictment gave Mr. Medrano notice pursuant to
21 U.S.C. § 851 of prior convictions for a "serious drug felony"—Possession of
Cocaine with Intent to Deliver, in Buena Vista County, Iowa, entered on or
about October 19, 2009—and a "serious violent felony"—Robbery, in Hidalgo
County, Texas, entered on or about March 20, 2006.  Dkt. 179 at 7.  The

1

government also filed an information notifying Mr. Medrano that because of those two prior convictions, he was subject to increased punishment on Count One under 21 U.S.C. § 841(b)(1) of the CSA.  Dkt. 190.  Mr. Medrano waived his right to trial by jury on the issue of whether he sustained the prior convictions alleged in the superseding indictment and in the § 851 information. Dkt. 199.  A jury convicted Mr. Medrano on both counts of the superseding indictment.  Dkt. 286.  Sentencing is scheduled for December 1, 2022.  Dkt. 330.

The government has filed a motion asking the Court to find in advance of sentencing that Mr. Medrano's 2009 Iowa conviction for Possession of Cocaine with Intent to Deliver is a serious drug felony under the CSA.  Dkt. 334.  If that conviction qualifies, then Mr. Medrano has two qualifying convictions and faces a 25-year statutory mandatory minimum sentence on Count One.  21 U.S.C. § 841(b)(1)(A).[1]

## II.
## Applicable Law

The CSA defines a "serious drug felony" as,

> *an offense described in section 924(e)(2)* of title 18 for which—(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

21 U.S.C. § 802(57) (emphasis added to cross-reference of the Armed Career Criminal Act).

---

[1] No objection has been made to use of Mr. Medrano's 2006 Texas robbery conviction as a serious violent felony under the CSA.

The Armed Career Criminal Act ("ACCA") in turn defines a "serious drug offense" as,

> an offense under State law, *involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, *a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)*), for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added).

Section 102 of the CSA defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). The schedules identify and classify controlled substances and are periodically updated by the Drug Enforcement Administration.[2] 21 U.S.C. §§ 811(a)(2) and 812(a). The definitions of schedule II drugs—including cocaine—are found in 21 C.F.R. § 1308.12.

In 2009, the federal definition of cocaine was,

> Coca leaves (9040) . . . except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

21 C.F.R. § 1308.12(b)(4) (2009). In 2015, the DEA changed the definition of cocaine to "remove[] the regulatory controls and . . . criminal sanctions

---

[2] The CSA gives the Attorney General the authority to update the controlled substance schedules. 21 U.S.C. § 811(a)(2). The Attorney General has delegated scheduling authority to the Administrator of the Drug Enforcement Administration. 28 C.F.R. 0.100.

applicable to controlled substances, . . . on persons who . . . manufacture, distribute, . . . [I]oflupane." 80 Fed. Reg. 54715 (Sep. 11, 2015).[3]

Thus, in 2022, the federal definition of cocaine is,

> Coca leaves (9040) . . . except that the substances shall not include:
>> (i)    Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; *or*
>> (ii)   *[I]oflupane.*

21 C.F.R. § 1308.12(b)(4) (2022) (cleaned up) (emphasis on added language).[4]

In 2009, Iowa defined cocaine, in relevant part, as,

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves. Decocainized coca leaves or extractions of coca leaves, which extractions do not contain cocaine or ecgonine, are excluded from this paragraph. . . .

Iowa Code § 124.206 (2009).

The parties agree that to determine whether Mr. Medrano's 2009 Iowa conviction is a serious drug felony under the CSA, the Court must compare the Iowa and federal statutory definitions of cocaine. Dkt. 334 at 3; dkt. 335 at 3 (both citing *United States v. Elder*, 900 F.3d 491, 501 (7th Cir. 2018)). If the

---

[3] The HHS recommended that Ioflupane be decontrolled "to allow specialized members of the healthcare community to readily utilize this substance as a component of an important diagnostic tool." 80 Fed. Reg. at 54717. Ioflupane is the active pharmaceutical ingredient in a drug product that was approved by the FDA for enhanced imaging of brain scans of adult patients with suspected Parkinsonian syndromes. *Id.* at 54716. When decontrolled in 2015, Ioflupane was a new molecular entity. *Id.*

[4] The Court refers to the 2022 CFR definition provided by the parties, dkt. 334 at 7, dkt. 335 at 5.

Iowa definition matches the federal definition, then the Iowa conviction is a serious drug felony under § 841. *Elder*, 900 F.3d at 501. On the other hand, "[i]f state law defines the offense more broadly than the federal statute, the prior conviction doesn't qualify as a predicate offense . . . ." *Id.*

The parties further agree that the Court must use the definition of cocaine under Iowa law that was in effect in 2009 when Mr. Medrano was convicted of Possession of Cocaine with Intent to Deliver. Dkt. 334 at 4; dkt. 335 at 3. The parties also agree that, in 2009, the definitions of cocaine were substantively identical under Iowa and federal law, so they match under the categorical approach. Dkt. 334 at 4; dkt. 335 at 3,6; *see Elder*, 900 F.3d at 501. In 2015, the federal definition of cocaine became narrower than the Iowa definition of cocaine after the DEA decontrolled Ioflupane. *See* 21 C.F.R. § 1308.12(b)(4); 80 Fed. Reg. 54715. Thus, whether Mr. Medrano's 2009 Iowa conviction qualifies as a serious drug felony under the categorical approach turns on which federal definition of cocaine applies under § 841—the definition that was in effect at the time of Mr. Medrano's conviction in Iowa, or the definition that was in place at the time of sentencing in 2022. *Elder*, 900 F.3d at 501 ("we determine whether the state conviction can serve as a predicate offense by comparing the elements of the state statute of conviction to the elements of the federal recidivism statute.").

The government argues that the Court must use the 2009 federal definition of cocaine, dkt. 334 at 4, while Mr. Medrano argues that the Court must use the 2022 federal definition of cocaine, dkt. 335 at 6.

**III.**
**Discussion**

The Court begins with the text of the CSA. *McNeill v. United States*, 563 U.S. 816, 819 (2011); *United States v. Sanders*, 909 F.3d 895, 901 (7th Cir. 2018). Under the CSA, "[i]f any person commits a violation of this subparagraph . . . after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years . . . ." 21 U.S.C. § 841(b)(1)(A). Thus, the plain text of the statute requires the court to determine whether Mr. Medrano's "prior conviction" was for a serious drug felony that had become final. *McNeill*, 563 U.S. at 820.

Because the Seventh Circuit hasn't addressed the specific issue presented here, the parties rely on two recent cases from other circuits, decided on the same day, that reached opposite conclusions. Mr. Medrano argues that the Court should follow *United States v. Perez*, where the Eighth Circuit held that "the federal law in effect at the time of the federal sentencing is the relevant definition for ACCA purposes." 46 F.4th 691, 699 (8th Cir. 2022); dkt. 335 at 6–7. The government argues that the Court should follow *United States v. Clark*, where the Sixth Circuit held that, in the context of the United States Sentencing Guidelines ("USSG") career offender enhancement, "the proper reference is the law in place at the time of the prior conviction." 46 F.4th 404, 406 (6th Cir. 2022); dkt. 334 at 5.

The Court finds that *Clark*'s approach of applying the federal definition that was in place at the time of the state conviction is truer to the text of § 841 and is consistent with Seventh Circuit's interpretation of that statute. *See Sanders*, 909 F.3d at 902–904 (affirming the defendant's increased mandatory minimum sentence, even though his prior state offense of conviction had been reclassified from felony to misdemeanor, because it was a "final" felony conviction under the "clear" and "unambiguous" language of § 841(b)(1)(B)).

In *Clark*, the Sixth Circuit considered "whether the Guidelines' use of the term 'controlled substances' in the career offender enhancement should be defined with reference to the drug schedules in place at the time of the prior convictions at issue, or the schedules in effect at the time of sentencing on the current federal offense." 46 F.4th at 406. Under § 4B1.1 of the Guidelines, a career offender is a person who, among other conditions, "has at least two *prior* felony convictions" for a crime of violence or controlled substance offense. *Id.* at 408. § 4B1.2(c) "defines 'two prior felony convictions' to require that the defendant's commission of the instant offense be '*subsequent to* sustaining at least two felony convictions' for a crime of violence or controlled substance offense." *Id.* at 408. Clark argued that he did not qualify as a career offender because, after his state convictions for marijuana offenses, both the state and federal governments revised their drug statutes to exclude hemp from the definition of marijuana. *Id.* at 407. The court adopted a time-of-conviction rule under which the meaning of the term "controlled substance", for purposes of the categorical approach, was determined by reference to federal drug

7

definition in place at the time of the prior convictions rather than the federal drug definition in place at the time of the federal sentencing. *Id.* at 406.[5]

The Sixth Circuit found that the words "prior" and "subsequent to" in the career offender provision of the Guidelines "indicate[] that the court should take a backward-looking approach and assess the nature of the predicate offenses at the time the convictions for those offenses occurred." *Id.* at 409. The Sixth Circuit reasoned that this approach was required under the plain meaning of the applicable Guidelines text. *Id.* at 408.  It was also consistent with the Supreme Court's decision in *McNeill* where the Court "answered a closely related question." *Id.*  In *McNeill*, the Supreme Court unanimously found that the plain text of the ACCA required courts to look to the punishment authorized under the state statute at the time of the state conviction rather than at the time of federal sentencing.  563 U.S. at 820.  The Court reasoned that because the ACCA "is concerned with convictions that have already occurred", "[w]hether a prior conviction was for an offense 'involving . . . a controlled substance' can only be answered by referencing the law under which the defendant was convicted." *Id.*

In *Sanders*, the Seventh Circuit took a similar approach to interpreting the plain text of § 841(b)(1)(B) of the CSA—which requires enhanced sentencing "[i]f any person commits [a federal drug offense] after a prior conviction for a felony drug offense has become final".  909 F.3d at 899; 901.  There, the court

---

[5] The Seventh Circuit also applies the categorical approach to determine if a prior conviction qualifies under the Guidelines career offender enhancement. *United States v. Edwards*, 836 F.3d 831, 834 n.2 (7th Cir. 2016).

considered whether California's decision to reclassify the statute under which the defendant had been convicted from a felony to a misdemeanor meant that the conviction no longer qualified as a "felony drug offense" under § 841(b). *Id.* at 900. The Seventh Circuit found that the plain text of § 841(b)(1)(B) "calls for a 'backward-looking' inquiry" and "'tells us what event triggers the enhancement': a state felony drug conviction that is final." *Id.* at 901 (citations omitted). Therefore, "California's later decision to reclassify the felony as a misdemeanor 'does not alter the historical fact of the prior state conviction' becoming final—which is what § 841 requires." *Id.* at 901 (cleaned up). While this was an issue of first impression, the court had previously focused on the facts at the time of conviction when it "held a discharged drug conviction is considered a predicate 'conviction' for purposes of applying the § 841(b) enhancement." *Id.* (citations omitted).

While *Sanders* and *McNeill* considered changes in state law, the reasoning of those cases applies with equal force to changes in federal drug schedules. The plain text of § 841(b)(1)(A)—which requires enhanced sentencing "after 2 or more prior convictions for a serious drug felony or serious violent felony have become final,"—calls for a backward-looking inquiry to evaluate what qualifies as a "prior conviction" for federal sentencing enhancement purposes. And "looking backward to what was considered a 'controlled substance' at the time the defendant received the prior convictions that triggers the enhancement . . . tracks the purpose of recidivism enhancements", that is, "deter future crime by punishing those future crimes

more harshly if the defendant has committed certain prior felonies." *Clark*, 46 F.4th at 412.

Here, there is no dispute that the 2009 Iowa conviction is final and increases Mr. Medrano's mandatory minimum sentence if the Iowa and federal definitions of cocaine are a categorical match.  Dkt. 335 at 6 (Medrano brief arguing the Iowa conviction cannot be used as a predicate offense "unless the Court looks at the federal definition of cocaine . . . in 2009.").  There is also no dispute that, in 2009, the Iowa conviction was "an offense under State law, involving  . . . a controlled substance as defined" by federal law.  *Id.*; *see* 18 U.S.C. § 924(e)(2)(A)(ii).  The Court concludes that later changes to the federal drug schedules do not alter this "historical fact."  *Sanders*, 909 F.3d at 901.  In reaching this conclusion, the Court declines to follow *Perez*.

In *Perez*, the Eighth Circuit found that the federal definition in effect at the time of the federal sentencing controlled.  46 F.4th at 699.  Unlike the court in *Clark,* the court in *Perez* did not principally base its decision on the plain language of the statutory text or on *McNeill.  Id.* at 700 ("the reasoning in *McNeill* regarding state law does not translate to this issue concerning the federal drug statute.").  Instead, the Eighth Circuit reasoned that because "[w]hether a previous state conviction is a serious drug offense only becomes salient at the time of sentencing for a federal conviction under 18 U.S.C. § 922(g) . . . the federal law in effect at the time of sentencing is the relevant definition of ACCA purposes."  46 F.4th at 699.  Additionally, the Eighth Circuit reasoned that its rule complied with "due process and fair notice

10

considerations"; that it follows the general rule of applying federal law as it stands at the time of sentencing; that it would be illogical to increase a sentence based on conduct that Congress "has concluded is *not* culpable and dangerous"; that applying "now-superseded federal drug definitions would undermine Congress's ability to revise federal sentencing law as it deemed appropriate";[6] and that the differences between immigration and criminal proceedings supported applying different rules in each context.  *Id.* at 699–700.

The Court recognizes that *Perez*'s holding reflects the majority view among courts that have considered the question. *See United States v. Williams*, 48 F.4th 1125, 1139–41 (10th Cir. 2022) (collecting cases).[7]  *Clark,* however, convincingly distinguished those cases based on *McNeill.*  46 F.4th at 412 ("Those courts . . . did not adequately engage with *McNeill*'s reasoning.").  In *McNeill*, the *Clark* court explained, the Supreme Court rejected the argument that the "present-tense text" of the ACCA supports a time-of-sentencing rule: "Despite Congress'[s] use of present tense ... we have turned to the version of state law that the defendant was actually convicted of violating." *Clark,* 46

---

[6] While not controlling under the categorical analysis, it's worth noting that the change to the federal definition of cocaine was not the result of Congress determining that offenses involving dealing cocaine were less culpable and dangerous than once thought to be.  *See supra* at 4 n.3 (explaining that the federal definition of cocaine was changed by the DEA in the Code of Federal Regulations to allow specialized members of the healthcare community to readily utilize a new molecular entity that had been approved by the FDA for enhanced imaging of brain scans of adult patients with suspected Parkinsonian syndromes).

[7] *But see United States v. Jackson*, 2022 WL 4959314 (11th Cir. September 8, 2022), *sua sponte* vacating *United States v. Jackson*, 36 F.4th 1294, 1297 (11th Cir. 2022) (which had adopted the majority view) and ordering supplemental briefing after *Clark* was decided.  This case has not been resolved as of the time of this order.

11

F.4th at 414 (quoting *McNeill*, 563 U.S. at 821).  That's because the "present-tense argument" "overlooks the fact that ACCA is concerned with convictions that have already occurred" and that "'culpability and dangerousness' attach at the time of conviction."  *Id.* (quoting *McNeill*, 563 U.S. at 820; 823).  This reasoning also aligns with *Sanders* where the Seventh Circuit similarly explained that "[a] primary purpose of § 841 'is to discourage repeat offenders.'" 909 F.3d at 902; *see also McNeill*, 563 U.S. at 823 ("Congress based ACCA's sentencing enhancement on prior convictions and could not have expected courts to treat those convictions as if they had simply disappeared.").

Moreover, *Clark* found that using the backward-looking time-of-conviction approach in the criminal sentencing context was supported by use of that rule in the immigration context.  46 F.4th at 410–11; *see e.g., Doe v. Sessions*, 886 F.3d 203, 210 (2d Cir. 2018) (adopting a "time-of-conviction" rule so that defendants may assess the adverse immigration consequences of pending criminal charge at that "most critical" point).  Thus, even if there are underlying differences in when a prior conviction becomes relevant between the immigration and criminal contexts, *see Perez*, 46 F.4th at 700; dkt. 335 at 10–11, adopting a rule that mirrors the one applied in immigration cases moves closer to "national uniformity."  *Sanders*, 909 F.3d at 902 ("explaining that its 'backward-looking' approach furthered the Supreme Court's 'repeated admonishments that federal laws should be construed to achieve national uniformity.'").

Last, *Clark* also provided convincing reasons for rejecting arguments that the rule of lenity and fair notice concerns require using a time-of-sentencing rule rather than a time-of-conviction rule. First, the rule of lenity did not apply because a "reasoned interpretation of the text" can be reached by applying tools of statutory interpretation. *Clark*, 46 F.4th at 415 (citing *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) ("[T]he rule of lenity applies only when 'after seizing everything from which aid can be derived,' the statute is still grievously ambiguous.")). Second, the backward-looking time-of-conviction rule "negates" concerns about fair notice to a defendant because the statutes in effect at the time of the state offense conduct are the same statutes used in determining whether that conduct will result in increased sentencing. *Id.* The same is true here with application of the federal definition of cocaine that was in effect at the time of the state offense. *See McNeill*, 563 U.S. at 823 (applying the state law as it stood at the time of the state conviction "permits a defendant to know even before he violates [a federal statute] whether" his sentence would be enhanced because of a prior state conviction).

*       *       *

The Court concludes that the federal drug schedule that was in effect at the time of the state conviction must be compared to the state statute of conviction. Therefore, the federal definition of cocaine in effect at the time of Mr. Medrano's Iowa conviction is the definition that must be compared to the Iowa definition of cocaine in effect at the time of Mr. Medrano's conviction in

Iowa.  Because the 2009 Iowa definition of cocaine is a categorical match to the 2009 federal definition of cocaine, *see supra* at p. 3–4, Mr. Medrano's conviction for Possession of Cocaine with Intent to Deliver, qualifies as a serious drug felony under 21 U.S.C. § 841(b)(1)(A).  *Elder*, 900 F.3d at 501. Should the government make the requisite factual showing under 21 U.S.C. § 851, *see* dkt. 199, the Court will consider the conviction in calculating Mr. Medrano's statutory mandatory minimum sentence under § 841(b)(1)(A).

## IV.
## Conclusion

Therefore, the government's motion is **GRANTED**.  Dkt. [334].

**SO ORDERED.**

Date: 11/8/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Ivan A. Arnaez
ARNAEZ LAW OFFICES
jdcmjs@aol.com

Patrick Gibson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
patrick.gibson@usdoj.gov

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kendra.klump@usdoj.gov

Samantha Spiro
DOJ-USAO
samantha.spiro@usdoj.gov